**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Becky Rushton,

Plaintiff,

v.

United States of America, et al.,

Defendants.

No. CV-25-01541-PHX-DGC

**ORDER**

Plaintiff Becky Rushton brings this wrongful death action against the United States (the "government"), West Ventures Inc., d/b/a A Toe Truck ("Toe Truck"), and RBEX Inc., d/b/a Apple Towing Co. ("Apple Towing"). Doc. 10. The government has filed a motion to dismiss for lack of subject matter jurisdiction. Doc. 45. Plaintiff subsequently filed a motion for leave to file a second amended complaint. Doc. 67.[1] The motions are fully briefed (Docs. 45, 47, 51, 53, 67, 69, 71, 76), and oral argument will not assist the Court. For the reasons discussed below, the Court denies both motions.

## I. Background.

Plaintiff was married to decedent, Scott Rushton Jr., who died in a vehicle collision on April 10, 2024. Doc. 10 ¶¶ 1-2. The collision resulted when a motorhome – which had been seized by the U.S. Marshals Service ("USMS") and was being operated by Adrian

[1] On July 23, 2026, Defendant Apple Towing filed a motion to consolidate (Doc. 77) a related case (CV-26-05104-PHX-KML), which this Court granted (Doc. 82). The consolidation does not affect this order.

Lara, an employee of Toe Truck – crossed the centerline and collided with Scott Rushton's vehicle, killing him instantly. *Id.* ¶¶ 15, 18-19, 28.

After seizing the motor home on the morning of April 10, 2024, the USMS contacted Apple Towing "to tow or deliver the [m]otorhome to Yuma." *Id.* ¶ 20. Apple Towing contacted Toe Truck because Apple did not have a large enough tow truck for the motorhome. *Id.* ¶ 21. Although it appears the initial plan was to tow the motorhome to Yuma, a decision was made to drive the motorhome instead. *Id.* ¶ 22. Deputy U.S. Marshal Parra and another vehicle followed the motorhome on its drive to Yuma. Doc. 69-1 at 10. The accident occurred during the drive. Plaintiff alleges the USMS did not inspect the motorhome, and the front driver-side tire failed, causing the collision. Doc. 10 ¶¶ 27, 30.

Plaintiff brought a wrongful death action against the government, Toe Truck, and Apple Towing in her first amended complaint. Doc. 10. The government has moved to dismiss on the basis of sovereign immunity. Doc. 45. After the motion to dismiss was fully briefed, Plaintiff moved for leave to file a second amended complaint that asserts four new claims. Doc. 67.

**II. Motion to Amend.**

The Court entered a Case Management Order on August 20, 2025, which set a 60-day deadline for amending pleadings. Doc. 26 ¶ 2. The Court granted an extension on December 18, 2025. Doc. 43. The deadline for amending pleadings was adjusted to 60 days from that date, or February 16, 2026. *Id.* ¶ 2. Plaintiff filed her motion for leave to file a second amended complaint on June 25, 2026 – 129 days after the extended deadline. Doc. 67.

"When a district court enters a pretrial scheduling order establishing a deadline for amending the pleadings, as the [C]ourt did here, a motion to amend is governed by Rule 16(b)." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992)). Under Rule 16(b), a plaintiff "must show good cause" for failing to amend the complaint "before the time specified in the scheduling order expired." *Id.* (quoting *Coleman v. Quaker Oats Co.*,

232 F.3d 1271, 1294 (9th Cir. 2000)). The good cause standard "primarily considers the diligence of the party seeking the amendment." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson*, 975 F.2d at 609). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification," and "[i]f that party was not diligent, the inquiry should end." *Kamal*, 88 F.4th at 1277 (quoting *Johnson*, 975 F.2d at 609); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

Plaintiff seeks to bring four new claims in her second amended complaint: negligent entrustment against the government, negligent entrustment and negligence against Toe Truck, and negligent selection of an independent contractor against Apple Towing. Doc. 67 at 6-12.[2]

Plaintiff's motion addresses the Rule 16(b) good cause standard only with respect to her negligent entrustment claim against the government. *Id.* at 6-7. She argues good cause exists because she could not "responsibly" assert the new negligent entrustment claim without the testimony of Deputy Parra, which Plaintiff contends "corroborat[ed] . . . the circumstances under which the USMS came to place Mr. Lara behind the wheel of the seized vehicle, including the agency's role in directing that the vehicle be driven rather than towed." *Id.* But Plaintiff never identifies or describes any testimony from Deputy Parra. Thus, it is unclear how Plaintiff's negligent entrustment claim against the government depended on Deputy Parra's deposition.[3]

---

[2] Plaintiff also seeks to amend the name of Defendant Toe Truck to West Ventures Inc., d/b/a A Toe Truck. Doc. 67 at 2. Toe Truck does not contest this name change (Doc. 69) and has previously instructed it was incorrectly named in the complaint (Doc. 14 at 1). The Court will correctly reflect Toe Truck's name in the record moving forward, but will not permit Plaintiff leave to file a second amended complaint on this basis.

[3] Plaintiff contends certain delays were outside of her control: she could not depose Deputy Parra until March 31, 2026, due to the 6-week federal government shutdown and scheduling difficulties between the parties, and she did not receive his deposition transcript until May 26, 2026, due to a 30-day review window requested by the government. Docs. 67 at 6-7, 76 at 5. She contends she diligently filed her motion for leave 30 days after receiving the transcript. *Id.* These delays are not the basis for the Court's conclusion that Plaintiff failed to act diligently.

The record shows that Plaintiff knew the facts necessary to state her negligent entrustment claim well before the February 16, 2026 amendment deadline:

- When Plaintiff filed her original complaint on May 6, 2025, she possessed a police report from the collision which stated that Deputy Parra told the on-scene officer that "the motorhome was seized by the [USMS] and that Lara was a contracted driver for them," and that Deputy Parra "and another vehicle were caravaning the motorhome to Yuma." Docs. 1 ¶ 16, 69-1 at 10.
- Plaintiff received Lara's toxicology report, which shows Lara was under the influence at the time he operated the motorhome, in August 2025, some eleven months before she sought to amend the complaint. Doc. 67 at 4.
- Plaintiff claims that the USMS's role in directing that the motorhome be driven instead of towed was unclear, but her first amended complaint, filed on June 10, 2025, alleges that "the USMS was the possessor of the Motorhome and decided whether to tow it or have it driven to Yuma." Doc. 10 ¶ 31.

From these facts, Plaintiff could plausibly have alleged a negligent entrustment claim against the government well before the February 16, 2026 amendment deadline. The elements of that claim include: (1) that the defendant owned or controlled a vehicle; (2) the defendant gave the driver permission to operate a vehicle; (3) the driver, by virtue of his physical or mental condition, was incompetent to drive safely; (4) the defendant knew or should have known that the driver, by virtue of his physical or mental condition, was incompetent to drive safely; (5) causation; and (6) damages. *Verduzco v. Am. Valet*, 377 P.3d 1016, 1019 (Ariz. Ct. App. 2016). Of these six required elements, element (1) was alleged in Plaintiff's original complaint (Doc. 1 ¶ 18), element (2) was clear from the police report's account that Deputy Lara said the vehicle was being driven by a contractor for the USMS (Doc. 69-1 at 10), element (3) was also clear because the toxicology report was received by Plaintiff almost a year before amendment was attempted (Doc. 67-2 ¶ 6), and elements (5) and (6) were alleged in the original complaint (Doc. 1 at 5-6).

The only remaining element is number 4 – that the government knew or should have known Lara was impaired. While this is indeed a necessary element of negligent entrustment, Plaintiff identifies no information she obtained from Deputy Lara's deposition that shed light on this issue. In fact, she alleges in her motion for leave to amend that "[d]iscovery *will reveal* what steps, if any, the USMS took to verify Lara's fitness to drive the seized vehicle, whether the USMS observed any signs of impairment, and whether the USMS had policies requiring such verification." Doc. 67 at 10-11 (emphasis added). In other words, Plaintiff has yet to discover this information, and yet that gap in the evidence did not prevent Plaintiff from alleging in the proposed second amendment complaint that "[t]he USMS knew or should have known that Lara, by virtue of his physical and mental condition, was incompetent to operate the Motorhome safely." Doc. 67-1 ¶ 51. If Plaintiff can make that allegation in good faith now, when she still lacks concrete evidence of the fact, she could have made it months ago on the basis of the toxicology report and the USMS's role in arranging for transport of the vehicle. Indeed, Rule 11 specifically permits Plaintiff to make factual allegations on the ground that she "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3).

Thus, Plaintiff could have added a negligent entrustment claim in 2025. She has identified nothing new that she learned from the deposition of Deputy Lara. The Court accordingly concludes that Plaintiff, through reasonable diligence, could have asserted her negligent entrustment claim against the government by the February 16, 2026 amendment deadline, and she therefore has not shown good cause under Rule 16(b)(4). *Kamal*, 88 F.4th at 1277; *Johnson*, 975 F.2d at 609. And if, as Plaintiff now claims, she thought additional discovery was needed before the complaint could be amended, she could have sought an extension of the Court's deadline, but she did not do so. Because Plaintiff has not satisfied the good cause requirement of Rule 16(b)(4), "the inquiry will end" and the motion to amend will be denied. *Kamal*, 88 F.4th at 1277; *Johnson*, 975 F.2d at 609.

With respect to her three new claims against the towing company Defendants, Plaintiff makes no attempt to show good cause. *See* Doc. 67 at 6-7. Her reply briefly argues that those claims turn in part on "the entrustment circumstances corroborated through Deputy Parra's March 2026 testimony" (Doc. 76 at 7), but she again fails to explain how Deputy Parra's testimony shed any light on this issue. Nor would Deputy Para's actions have any clear connection to the alleged negligence of the towing companies.

Plaintiff knew of the employment relationship between Lara and Toe Truck, and the contractual relationship between Toe Truck and Apple Towing, when she filed her original complaint. Doc. 1 ¶¶ 20, 22. She possessed the police report of the accident and Lara's toxicology report in 2025. From these facts, she could have pleaded her new claims, which sound in negligence related to Lara's intoxication and the employment relationship between Lara and the towing company defendants. *See* Doc. 67-1 at 9-12. Plaintiff has not shown she was unable to meet the amendment deadline through reasonable diligence, and therefore has not shown good cause under Rule 16(b)(4). The Court accordingly will deny her motion for leave to file a second amended complaint. *See Kamal*, 88 F.4th at 1277; *Johnson*, 975 F.2d at 608.

**III. Motion to Dismiss.**

Dismissal for lack of jurisdiction under Rule 12(b)(1) may be asserted as a facial or factual challenge. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)

The government's motion makes a facial attack. Doc. 45 at 3. A court must "resolve[] a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Sovereign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed in the text of a relevant statute. *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 768 (9th Cir. 2018) (citing *United States v. Bormes*, 568 U.S. 6, 9-10 (2012)). The Federal Tort Claims Act ("FTCA") waives government immunity for certain tortious conduct by government actors. 28 U.S.C. § 1346(b)(1). The statute imposes liability "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.*

The FTCA contains a discretionary function exception that preserves government immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

Application of the discretionary function exception involves two steps. First, the Court must decide "whether the challenged actions involve an 'element of judgment or choice[.]'" *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (citations omitted). Second, the judgment or choice must be "the kind that the discretionary function exception was designed to shield, namely, . . . governmental actions and decisions based on considerations of public policy." *Id.* (citation modified). If both steps are satisfied, the exception applies. *See* § 2680(a).

The government bears the burden of demonstrating that the discretionary function exception applies. *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014). In evaluating the exception, "the question of how the government is alleged to have been negligent is critical." *Id.* at 1054 (citation omitted); *see also Chang v. United States*, 139 F.4th 1087, 1097 (9th Cir. 2025) (identifying "[t]he challenged conduct" in the case before deciding whether the discretionary function exception applied).

The government conduct challenged in Plaintiff's first amended complaint is the USMS's alleged failure to inspect the motorhome to ensure it was safe to drive. The complaint alleges that the front tires of the motorhome were 18 years old (Doc. 10 ¶¶ 24, 26); they were conspicuously marked with the 2006 year of their manufacture (¶ 30); the collision resulted when the left front tire failed, causing Lara to lose control of the motorhome (¶¶ 27-28); and the USMS did not inspect the motorhome before directing Lara to drive it to Yuma (¶¶ 30-31).[4]

**A. Element of Judgment or Choice.**

The first step asks whether USMS's alleged decision not to inspect the motorhome "involve[d] an element of judgment or choice," which is not the case when "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Terbush*, 516 F.3d at 1129 (citations omitted). The decision to inspect or not inspect the vehicle clearly involved a judgment or choice. Neither party contends that inspection was compelled by a statute, regulation, or policy. The first step of the discretionary function exception is satisfied.

**B. Policy Considerations.**

The second step asks whether the government's exercise of judgment is "of the kind that the discretionary function exception was designed to shield[.]" *Terbush*, 516 F.3d at 1129 (citation omitted). The shield applies only to "governmental actions and decisions based on considerations of public policy," which "has been understood to include decisions grounded in social, economic, or political policy." *Id.* (citation modified).

The Court finds itself ill-equipped to decide whether the second step of the inquiry is satisfied. The second step is a case-specific inquiry. As the Ninth Circuit has made clear, "[w]hether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *GATX/Airlog*

---

[4] In responding to the government's motion, Plaintiff also focuses on USMS's alleged failure to inspect the vehicle. Doc. 47 at 2 ("The conduct alleged here[ is the] failure to inspect a seized vehicle for basic [r]oadworthiness[.]"), 4 ("The challenged conduct here is not the abstract decision to transport the vehicle, but the failure to ensure the vehicle was safe to be driven[.]").

*Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002). "[E]ach FTCA discretionary function exception case turns on its own facts," and "the distinctions between the design of a government plan and its implementation, the extent to which the action is one of routine maintenance," and other considerations "all inform the assessment of when the discretionary function exception applies." *Chang v. United States*, 139 F.4th 1087, 1097 (9th Cir. 2025). "These considerations help [courts] to place a given government act or omission on the spectrum of decisions that may be susceptible to public policy considerations and to which the discretionary function exception would apply." *Id.*

Here, the parties provide little factual context for the government action at issue – an alleged failure to inspect the motorhome before it was driven to Yuma.[5] The government argues primarily by analogy, citing cases which hold that the discretionary function exception applies to the government's supervision of third-party contractors. *See, e.g.*, *Reyes Colon v. United States*, No. 18-1225 (PAD), 2019 WL 165578 (D.P.R. Jan. 10, 2019) (holding the exception barred claim that United States failed to properly inspect a third party mail-delivery truck); *Jimenez v. United States*, No. SA-20-CV-00575-XR, 2021 WL 860008 (W.D. Tex. March 5, 2021) (same); *Est. of Anderson-Coughlin v. United States*, No. 3:16-CV-01492 (JAM), 2017 WL 6624020 (D. Conn. Dec. 28, 2017) (applying exception where contractor driving a tractor trailer rear-ended a car causing fatality); *Jones v. United States*, No. 1:12-CV-00290-SEB, 2013 WL 2477288 (S.D. Ind. June 7, 2013) (applying exception where contractor driving a semitruck lost control and veered across the median, causing fatality).

Plaintiff, on the other hand, argues that matters of routine maintenance are not protected by the discretionary function exception because "they generally do not involve policy-weighing decisions or actions. That is particularly so when the standard upkeep in question has safety implications." *Chang*, 139 F.4th at 1095 (citing *Young*, 769 F.3d at 1059; *Terbush*, 516 F.3d at 1133; *Whisnant v. United States*, 400 F.3d 1177, 1185 (9th Cir.

[5] Indeed, the government's motion to dismiss focuses primarily on a different government action – the decision to have it driven rather than towed. *See* Doc. 45.

2005)). "[A]n agency's decision to forego, for fiscal reasons, the routine maintenance of its property—maintenance that would be expected of any other [property owner]—is not the kind of policy decision that the discretionary function exception protects." *Id.* (quoting *O'Toole v. United States*, 295 F.3d 1029, 1036 (9th Cir. 2002)).

But cases finding the challenged government conduct was a matter of routine maintenance generally concern property owned by the government and used for governmental purposes. *See, e.g.*, *Chang*, 139 F.4th at 1091 (lawn area on national park land); *Bolt v. United States*, 509 F.3d 1028, 1031 (9th Cir. 2007) (parking lot on military base); *Whisnant*, 400 F.3d at 1179 (meat department of naval commissary); *O'Toole*, 295 F.3d at 1031-32 (irrigation system of ranch owned by the government); *Young*, 769 F.3d at 1051 (transformer near visitor center on national park land); *Terbush*, 516 F.3d at 1128; (wastewater management system on national park land); *ARA Leisure Servs. v. United States*, 831 F.2d 193, 194 (9th Cir. 1987) (roadway on national park land). The facts here are different. The motorhome was not a vehicle owned by the government and used for government purposes, but was in the USMS's possession following a law enforcement seizure.

The parties do not provide the Court with facts that can assist it in determining whether the government's cases or Plaintiff's cases are more analogous. The parties provide no background on the motorhome's seizure. Was it simply impounded temporarily for a search and safekeeping? Was it seized more permanently for forfeiture to the United States, in which event it would become government property? Were the deputies familiar with the condition of the motorhome – had they been surveilling it for some time?

Nor do the parties discuss whether the USMS had policies regarding the inspection or roadworthiness of seized vehicles. And neither party discusses the fact that "the design of a course of governmental action is shielded by the discretionary function exception, whereas the implementation of that course of action is not." *Chang*, 139 F.4th at 1094 (citation omitted); *see also Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1215 (9th Cir. 2001) ("The decision to adopt safety precautions may be based

in policy considerations, but the implementation of those precautions is not."). Was the seizure and transport of the motorhome simply the implementation of a previously determined course of action?

The government's reference to *Fiedler v. United States*, 165 F.4th 1310 (9th Cir. 2026), is also unhelpful. Doc. 53. The government argues that in *Fielder*, the Ninth Circuit concluded "the United States Coast Guard's actions in conducting inspections of passenger dive boats 'are textbook discretionary judgments rooted in public policy considerations,'" and that "the Coast Guard 'handles ten other missions—beyond just marine safety,' which would complicate the economic feasibility of those missions if a court were to also impose duty in tort to conduct safety inspections." *Id.* at 1 (quoting *Fiedler*, 165 F.4th at 1320). But the government does not argue, let alone explain, what policy considerations apply to the USMS, an entirely different agency. *Fielder* pointed to specific regulations that statutorily vested the Coast Guard with discretion in how it performed inspections and the underlying policy considerations. 165 F.4th at 1320 (citing 46 U.S.C. § 3305(d)(1); 46 C.F.R. §§ 175.550, 176.800(b)). The government cites no comparable regulations governing the USMS.

In short, the Court cannot on this record determine whether step two of the discretionary function exception is satisfied. The government has not met its burden. Because the Court has an ongoing obligation to confirm that it has subject matter jurisdiction, the government may raise this issue again at the summary judgment stage, when a more complete record presumably will exist.

**IT IS ORDERED:** Plaintiff's motion for leave to file a second amended complaint (Doc. 67) is **denied**, and Defendant's motion to dismiss (Doc. 45) is **denied**.

Dated this 9th day of September, 2026.

David G. Campbell
Senior United States District Judge